Good morning again. David Merchant on behalf of Mr. Horob. The government has filed, well, let me begin. In the opening brief, there were seven issues raised by Mr. Horob, trying to address those for the court. The government has conceded that bankruptcy fraud is not a predicate offense for the aggravated identity theft, which takes care of issues one and four. I'll circle back to that, to what I think the court should do with that. The third, excuse me, one of the issues is the money laundering. The government has filed a 28-J letter. I agree with them. I don't think there's a merger problem now. I think that the profits, proceeds, I think that the case law that the Ninth Circuit has developed in Webster and Ali answer our question with that. I think that those convictions, quite frankly, stand. I don't think that there's a merger problem. I don't think that the court created an error in the jury instruction. I would suggest to the court that those two cases that the government has provided answer our question in that. The opening brief also raised an ineffective assistance to counsel. I know that the court is very leery about deciding ineffective assistance on direct appeals. And, quite frankly, I think that the government should have its opportunity to find out what trial counsel was thinking at the time during those things. As a trial attorney with the defenders, the person who wrote the response or the reply brief, Mark Werner, in our office, read this and read the trial. Jay Lansing, who I think that Mr. Archer would agree that Mr. Lansing and Mr. Werner are very experienced, both think that there's ineffective assistance to counsel. I would concede the fact that this is probably not right at this time. The court has always said it has to be abundantly clear in the record. And, quite frankly, as I read through this, I think it is, but I think that Mr. Beck should have the opportunity to explain himself. And your side may be in a better position on a 2255 to elaborate on the argument with ineffective assistance. Absolutely. So with that in mind, I would concede that the government probably has a right to have an evidentiary hearing on that. The guidelines. That was one of the issues raised by the opening brief. And, quite frankly, not being trial counsel, not being the counsel at the sentencing hearing, not being the counsel who wrote the opening brief or the counsel who wrote the reply brief, I think the judge did a fine job. I think that he went through and answered all of those questions. And not only did he find that the advisory guideline range was too high, he then varied from it. I think where it's kind of muddled would be to the fact that kind of convoluted, where the judge says, yeah, I see where the guideline is. I think that's too high, so I'm going to vary two levels and get there. What I would have preferred the trial judge to do would be simply to say, I find this to be the guideline, and I'm going to give a sentence of X, because I think that the guideline there isn't a – the guideline is greater than necessary. I think that would have been a cleaner way to do it. But, again, in reading through the transcript of the trial and reading through the sentencing hearing and reading through all of the pleadings, the case law, I don't find that there is any error on the part of the district court as far as that goes. So I would concede that at this argument also. Which leaves us, basically, our argument to the sufficiency of the evidence, to the false statement, to Wells Fargo, and the sufficiency for the bank fraud to Dakota West. As you go there, can I just say that – and I appreciate what you've done. I mean, this is excellent, you know, to be straightforward. But it would have been nice if they had gotten you into this case earlier, because all three of us have spent a considerable amount of time, and it would have been very useful to winnow the – winnow the case down before it was presented to us. I would suggest that all – I compliment you. I'm not – Where we're at, then, is the sufficiency. Just keep in mind for your office that having that kind of view at the front end certainly would save the bench a whole lot of time. Well, and I guess as my political spot, that, I think, is the benefit. Mr. Werner is the only one with the Federal Defenders. He was the one who wrote the reply brief and who didn't argue the ineffective assistance, who didn't argue those things. So we have two cases, Ali and Allen, which talk about the sufficiency. And this is a four-day trial. And in the heat of a trial, I understand not dotting every i and crossing every t because you're listening to what they're saying, you've got your notes. But the simple fact is the two witnesses, four, Dakota West, and four, Wells Fargo, spoke in the present tense when it was about the insurance, and that just doesn't do it. Ali and Allen are controlling here. There's a six-month period that occurs with where, which is what the government relies on. This is more than three years. The simple fact is the government – I understand your point, and I think it's right. I'll wait to hear from the other side on Wells Fargo. But the only thing we have in the evidence is the present tense is for Wells Fargo. For Dakota West, we have is, plus the jury has an exhibit that says something. And what do we do with that? Because that may get you on that one. And I didn't have that exhibit, and Mr. Archer was kind enough to send me a copy of it. And I have it. And when he sent it to me, I printed it off. And quite frankly, you have it, too. It is – it took me a while to figure out where it was on this. It was never once during the trial referenced. Yes. So where is it in the ERs? 595. Say again? 595. 595. It is at the top right corner. It says NCUA. NCUA, your savings federally insured to $100,000. And then under that, it says National Credit Union Administration, a U.S. government agency. It was never once highlighted to the jury. It was given to the jury. But in the Ware case, those things – remember, you had two tellers who were saying, I work for the bank. It is insured. The deposit's on the side of – the certificate's right there. I know it. All banks are federally insured. Did the defense argue at trial if there was any issue with respect to this? I'm sorry. I didn't hear you. Did the defense argue at trial, make an issue of this? The defense did not. Okay. So nobody called it to the jury's attention, but an exhibit that, as I understand it, was a government exhibit. A, it was in evidence. It was in evidence. Absolutely. So the jury had it available. Let me guess why the defense did not make this issue. I assume – Because the problem was so easily cured. Yes. And, you know, that actually kind of plays into the fact that there's an IAC that's significantly hanging out there. But that would be the one saving –       It's going to be a good defense. It's going to be a good defense. It's going to be a good defense. And it's going to be a good defense. And the fact that the defense has made that objection, why they're going to fix it in a second, the result may be a clear error. Absolutely. Plain error, you mean. I don't think that that saves it. You have the Allen case that does have the one part of that. And again, the fact that this is not affirmatively placed in the public opinion – Excuse me.  The defense could have moved for this at the close of evidence. Yeah. The defense didn't move either at the close of two things, which is problematic for our standard. I understand. But with that, Allen and Alley, and the Court is well aware of both of these cases, the time frames with Allen, the fraud was committed in 88 and 89, the trial took place in 94, the testimony was in the present sense. The document said member FDIC. It was dated March 2nd, 1989. That is close to what we have here. But again, we have a – this was never a part of any trial. And maybe there's an assumption with the jury that the bank is federally insured, but the government bears the burden. And close doesn't count in the process. Are you saying that the government Exhibit 8, referring to the Dakota West Credit Union, was not introduced as evidence? No, it was, Your Honor. It was clearly introduced as evidence. It was introduced? Yes. So that's part of the record? Yes. Okay. And should – you're saying we should ignore it? No, I'm not saying that you should ignore it. I think you should take it in light of what Allen and Alley say, and that it was not – and both of those cases talk about the fact that it wasn't presented to the jury. There was no affirmative evidence at the time that showed that when the fraud took place, that it was insured. Is there any evidence that the jury asked for a magnifying glass? No. And that's the other problem with this, is it's small. In Allen, it was significantly larger. With that, Your Honor – You're saying that we should ignore an exhibit that was received and part of the record? No, I'm suggesting, Your Honor, that you are a well-trained legal theorist who understands the elements of a crime and understands that that stamp is required and understands that banks are required to be federally insured. You come to the table with a vast amount of knowledge. A jury doesn't. And to have the permission from any court that a jury can start making assumptions about evidence that has not been presented to it, I think, becomes a problem. I think that – Not just – it was introduced in evidence, but it wasn't put forward as evidence for the purpose of establishing that it was an FDIC-insured or a government-insured. That's right. The government put it in for other purposes. Yes, that's right. So, looping back to the aggravated – Are you saying, then, that where an exhibit has been moved into admission and accepted, but the jury has no opportunity to look at that, that in examining the record of a case, we should never accept a consideration of a document that's presented and accepted where the jury does not have the opportunity to examine it? I would never say that to this Court. I can't tell you, though, from the record that the jury even looked at this document. That is not available in the record. The jury had an opportunity, but whether it took advantage of it, we don't know. To loop around, what we're asking the Court to do today, obviously, the aggravated identity theft is gone. Obviously, I think that the ineffective assistance at counsel is going to be weighted on, as well as the sentencing argument. I think the money laundering is stand. So we're left with a sufficiency, and I'm asking the Court to remand for a new trial, and here's the reason. In the sentencing of it, Mr. Archer was very, he argued about the person. He argued about the events. What Jay Lansing did was argue about the person. He argued about those things. Aggravated identity theft wasn't part of the matrix of the sentencing. Where the aggravated identity theft was a part of was in the charging, so when the  in the closings, and aggravated identity theft is the flavor of the month. You hear it every day on the radio. Avoid identity theft. Avoid identity theft. Get yourself these computer programs that will lock it in. It will tell you when somebody's looking at your credit. Identity theft. It has become the one thing that the boogeyman of your banking, of your documents, of your I've heard this over and over and over and over again. This is a pretty heroic argument. You're arguing, if I understand you, that the identity theft charge, which we now understand, both sides, there's no crime there, was so inflammatory that it infected the entire trial such that the entire trial has to be done over? That's the argument? I believe so, Your Honor. Oh, boy. Simply arguing that and having that as part of the horse team that's leading the cart. I can't imagine. Put that into a legal category for me, then. I mean, what's the standard on which we judge whether this is harmless error? I mean, how am I supposed to handle this? Well, that's why you're a judge, isn't it? I think that it becomes a harmless error. I think that that's the standard. And how do we judge harmlessness? You know, we have various standards for harmlessness depending on the type of violation, right? I think that the standard that the court should look at is whether or not the fact that that case, that charge from the onset shouldn't have been brought could have affected the judge. And do you have a case that tells me that that's the standard? I do not. I can give the court a case if the court would like until Friday. And you want to reverse on the Wells Fargo bank situation where there was no indication other than the testimony that the bank was presently insured? Quite frankly, I don't think that Wells Fargo is even in play. I think that Alan and Ollie clearly say that that can't stand. And that is plain error? And that is plain error. Okay. Let's hear from the government. We'll give you a chance to respond. May it please the court. I'm Ryan Archer, assistant U.S. attorney from Blank, Montana. So you're going to concede everything now? You know, I was going to say I like the way that Mr. Merchant started out. I'm not so sure I like the way he ended up. With regard to reversing it on the aggravated identity theft, basically on the theory that it so infected the trial that there's a new trial, I think that issue is clearly waived at this point. I appreciate his concessions, but I think that's a whole new issue brought up here, not even in the reply brief. Yeah, I confess that this is a nice argument, but I hadn't seen it before. And I guess the second thing I'll say is let's just rip the band-aid off here. I made a mistake at the trial level with regard to the federally insured status. In the course of a four-day trial, I asked two questions in the present tense versus the past tense, and that was my mistake. However, in my own defense, this was never an issue at trial. Yeah, I don't care about defending you. What do we do about the case? I'm inclined to reverse as to Wells Fargo because the only thing we have is the is. In a way, we're totally in fantasy land. I mean, we all understand that the bank was insured, but the case law is clear, and you just got to ask the question, was at the relevant time. Well, Your Honor, I agree with you. We are in a fantasy land, and I'll come back to Wells Fargo, but let me address Dakota West first of all. This is why we're in a fantasy land. We're now looking at a little stamp on Government's Exhibit A, but that's because there was never an issue in trial where we needed to point it out. So the question before this Court at this stage in the fiction we're living in is, was there any evidence in the record that shows that it was federally insured? And Exhibit A does that, and Allen ---- Even in the absence of a request by the jury for a magnifying glass? Yes, Your Honor. I can still read it. It comes through the scanning a little bit more blurred than it was for the jury. But, I mean, that's it. It's in the record. The evidence is there. And if you go back to the Allen case, all the Allen case relied on to prove federally insured status in the counts that held was an FDIC stamp. I can guarantee you that the prosecutor wasn't waving around that document saying, look at this FDIC stamp here. And so I think this case with Dakota West is precisely like the Allen case. You can probably save us ten minutes if you agree that we should overrule Esther Wells Fargo and then sit down. No, I can't do that, Your Honor. And I told Mr. Merchant beforehand I will go kicking and screaming into the night before I concede that because it's not true. And maybe I'm an optimist. Maybe I'm still a young prosecutor. But I like to think the trial is about truth. And this one I feel sucker punched. No blame on defense. He's doing his job as did everyone else. But when you come up to the appeal and all of a sudden an issue that was never an issue at trial. Counsel, this is what bothers me, okay? Okay. We've had this last calendar in October. We had two cases where false statements to a federal official. And you've got to lay the foundation in those cases and in these bank cases. The same concept. The government must lay the federal foundation. And, I mean, this is law that's out there. And it ought to be Hornbook 1A that you first come in and it's the first thing you do to establish federal jurisdiction. I know it's an evidentiary point. But that you have to put the evidence in. It's just you do it and you do it. And the banks, I don't know why the banks when they don't, you know, at least the Dakota West puts it on their document. When they do these transactions, why they don't put FDIC insured on their forms so that when you put the darn thing in it's sitting right there. Correct, Your Honor. And I was shocked to find out that my loan documents from Wells Fargo don't have FDIC insured. And I, you know, I accept. Wells Fargo's having lots of trouble with his loan documents. Not limited to this. That is true. That is true. It's a larger problem. But let me tell you why you shouldn't reverse in this case. Despite my error, despite the fact I should have known about it and the foundation was there. I think if you look at the questioning, and I admit my reasoning there on the line of questioning is pretty thin. But you see where I was going. He's a 30-year bank employee. He's been doing this credit management group for a long time. He met Mr. Horb in the course of his employment. And then my question is, and working with Wells Fargo. I mean, you see my intent, but I do admit the question was wrong. But here's why you shouldn't reverse. Wells Fargo is a national association bank. And you can't rely on that alone. But it was a national association bank. They're required to be federally insured. This is under a plain error review. And under the plain error review, the question before this court is, was there a manifest injustice that occurred as a result of this? And I submit to you that there's not a manifest injustice because there's no serious question of fact here. And I acknowledge in the Cruz case. Here is the problem. I just don't want to interrupt you. The presiding judge of this panel is nationally famous as a professor of federal courts. And the first day of class, I'm sure he explains to the class, in federal courts you have to, the first item is establishing jurisdiction, whether it's civil or whether it is criminal. Now, the situation here is you have to establish that this federal court has jurisdiction. And you have to prove the federal insurance aspect in order to have jurisdiction. So I think it's as clear cut as that as far as I'm concerned. I don't know whether I'm misquoting you. No, it's second day of class. Your Honor, and I agree with you. And that's why the first line of questioning, when I have the banker on the stand, is regarding the federally insured side. Let me ask you a practical question. Yes. If we knock out the Wells Fargo account, what happens to the sentence and so on? I mean, what's the practical consequence of this? The practical consequence, Your Honor, is that the major part of this fraud dealt with Wells Fargo. Now, we still have them on the wire fraud count. The question is, will they still get the same amount of restitution that they're entitled to? I think that's the question. I think the loss amount, the sentencing guidelines, everything's probably going to be the same. But based on just the wire fraud count where Mr. Horrib defrauded Wells Fargo, is Wells Fargo going to still get the same restitution judgment? Well, now, as a practical matter, again, I'll ask you, this is, I think, legally irrelevant, but as a practical matter, how much money does Mr. Horrib have now, and how likely is it that a million-dollar restitution judgment is ever going to get paid? Well, Your Honor, practically speaking, Mr. Horrib is probably never going to come up with that restitution. Me, personally, though, I don't like to see this happen. Believe us, we don't either. And this is why, and especially when you're under a manifest injustice standard, when there is no serious question out there, and as I said in my brief, the final factor of plain error analysis is the public reputation of the courts and how the decision will affect them. Be careful where you're going there. I mean, that's, you know, I saw that argument and I thought, this is a chutzpah argument. I screwed up, but a manifest injustice for the government to be held accountable for following the law. I mean, I just, you know, that's a little tricky, I think. Well, the problem is the case before us is an argument by a government agency that the defendant didn't adequately invoke his constitutional right to silence. Okay? And we're splitting hairs on what verbalization was done, and the government insists that it be, you know, being argued. Now, that was a state case. I understand that the government might make the same argument. So the point is we can joke here and say we don't like the law, but the law is clear in this circuit that the government must establish the jurisdictional predicate and that present-tense testimony is not adequate. So this isn't a, you know, a technicality that's just popping up extraneously. The law is clear, and so why shouldn't the government be held to do it? If what we do here is say, yeah, it's good enough for government work, then we're essentially undercutting our precedent and saying, well, all of these nice pronouncements in the Lee and Allen were just so much judicial whistling in the dark. And I don't know that that's manifest injustice all on one side to enforce. Your Honor, the law is clear, and that means there's error and it's plain. But you still have those two other factors. And my point is when you get to manifest injustice, what you have is a fact that's not seriously in question. If you look at the Keys case. What you have, counsel, you're missing my point. You have the manifest injustice of that, perhaps, and the manifest injustice of the government getting a pass when it's within the government's ability to avoid this whole issue in the first place in the face of clearly established law. So what is the standard? When the government comes in and screws up and the consequences seem outrageous, that it's okay. But if the defendant comes in and doesn't meet the deadline or something, even though they might go to jail, it's not manifest injustice. The standard, let me phrase it this way. If we were talking about Dakota West Credit Union versus Wells Fargo, I may be more apt to just concede the point and say, well, Dakota West Credit Union, small bank out there in western North Dakota, it's foreseeable that maybe this wasn't a federally insured bank. But what we have here is Wells Fargo, which if you look on the FDIC website, and I'm not saying you go outside of the record, but when we're talking about manifest injustice, people have been convicted of crimes for defrauding Wells Fargo in the same period as Mr. Hora. And when we look at the manifest injustice standard, there's simply no question of fact with regard to this. And that's what the Keys case basically said when it discussed its plain error analysis. It said that it's in the discretion of this court to determine whether or not there's manifest injustice. In the Keys case, there was an element that the jury was not instructed. You know, I'm sorry I encouraged you by saying this was fantasy land. I take that back. I'm just wondering if you're going to respond to your friend's contention that on the basis of the first count that you agree was improper, that this requires a new trial. No, Your Honor. With regard to conceding the aggravated identity theft, it does not require a new trial. It was one count that was included among many. And if you saw my trial chart, you'd see it was tacked on just at the end. The substance of the aggravated identity theft was a letter that was sent in the course of the bankruptcy proceeding. That letter was relevant to the bankruptcy fraud charge, which was count six in this case. So the letter probably would have been discussed by the trustee in the bankruptcy case. Well, I think your friend represented to us it was just not a casual thing, but reference was made throughout the trial if I understood him. Is that what he said? That's what he said. And I would take issue with that. The only reference made to it throughout the course of trial was that it was an additional count that was included in the indictment. I don't believe that I relied on it excessively in the closing arguments other than to explain what it was. All right. All right. With that, Your Honors, I'll sit down. And I understand your point, and I will accept it, but not happily. Judge Fletcher, in preparing for today, I did try to figure out what would happen. In restitution, it is our position that nothing changes except for the 24 months coming off the consecutive sentence. The Crime Victims' Rights Act actually expands restitution that's allowable. And if the two, the bank fraud and the false statement charges are disposed of because of Ali and Allen, I don't think restitution changes. Certainly, the grouping for the sentencing, the sentencing guidelines don't change, but I don't think restitution changes. The amount of loss could change. But with that said, again, I have a judge who varied and said this is where it's at and that the amount of loss would have gone into the guideline that he varied to. So in our opinion, the restitution amount stays the same. The other reality is that Mr. Horrup was, he received over 100 months on this. There were 60 head of cattle at the end of the day. There is nothing that the Horrups could provide. There was a pickup truck and a dog, too. And a very bad country song, yes. I don't think what the Court was talking about with the manifest injustice, I don't think we ever get there. I think Cruz says that the last two prongs are satisfied if there is insufficiency of the evidence to begin with. And I would ask the Court in my last, the reason Ali was decided this way was as the Court opined. 20 years ago, the Fifth Circuit forcefully put the government on notice that, quote, despite the fact that FDIC insured status is an express requirement of the applicable statutes, an essential part of the valid indictment and an indispensable item of proof of the offense, prosecutors have been extremely lax in the technique according to this element. This is what this Court does. It's the gatekeeper of these things. Those two charges simply can't stand. The little notice doesn't. Thank you. Thank you very much. I will say this. Thank you both for your arguments. The case of United States v. Horrups is submitted. I think I speak on behalf of the Court. Please tell your boss we're delighted to have you people show up for arguments. Both of us. Yeah. Yeah, well. Yeah, I expect you are. No, it is good. Much better. We're taking a ten-minute break. And when we come back, we'll do case.
judges: Aldisert, Fletcher W. , Fisher